## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>        )<br>    **Plaintiff,** )<br>        )<br>**vs.** )<br>        )<br>**MARCELO CHAIREZ-ESCAMILLA,** )<br>        )<br>        )<br>    **Defendant.** ) | **NO. CR 08-2408 RB** |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### AND ORDER DENYING MOTION TO SUPPRESS

**THIS MATTER** came before the Court on Defendant Chairez-Escamilla's (herein "Defendant's") Motion to Suppress Evidence [Doc. 47], filed on November 21, 2008. The Court held an evidentiary hearing on this motion on April 1, 2009.[1] Having considered the submissions of counsel, evidence adduced at the hearing, relevant law, and being otherwise fully advised, I issue these findings of fact and conclusions of law and deny Defendant's motion.

### FINDINGS OF FACT

1.    The Superseding Indictment charges Defendant with conspiracy to transport illegal aliens, in violation of 8 U.S.C. § 1324 (a)(1)(A)(v)(I), bringing in an illegal alien and aiding and abetting, in violation of 8 U.S.C. § 1324 (a)(2)(B)(ii) and 18 U.S.C. § 2, and two counts of transporting an illegal alien and attempt to transport an illegal alien, in violation of 8 U.S.C. §§ 1324 (a)(1)(A)(ii), (a)(1)(B)(ii), and (a)(1)(A)(v)(II).

---

[1] Subsequent to the suppression hearing, Defendant was set for a change of plea hearing on April 15, 2009. Defendant failed to appear for the plea hearing. A bench warrant was issued on April 16, 2009. Defendant is currently on fugitive status.

2.	Defendant moves to suppress the identification of Defendant by Melissa Itzigueri Saldaña-Cortez ("Ms. Saldaña"), the material witness herein, in a photographic array compiled by United States Border Patrol Agent Victor Garcia. Defendant contends that the photographic lineup was impermissibly suggestive and the manner in which it was presented to Ms. Saldaña was inherently unfair. Plaintiff maintains that the photo lineup was not impermissibly suggestive and that Ms. Saldaña's identification of Defendant was reliable under the totality of the circumstances.

3.	At the hearing, Border Patrol Agent Victor Garcia testified that, on July 8, 2008,[2] local police officers stopped a vehicle in Deming, New Mexico for an expired license plate. The police officers believed that the driver of the vehicle, who was Co-Defendant Crespin Fierro-Soborio, (herein "Mr. Fierro"), might be under the influence of drugs. The two passengers, one of whom was Ms. Saldaña, were soaking wet. It had been raining very hard that day, and the local police surmised that the two passengers might be undocumented aliens who had crossed the international border[3] from Mexico on foot. For this reason, the local police summoned the United States Border Patrol (herein "USBP").

4.	When USBP agents arrived, they recognized Mr. Fierro, who had been arrested by USBP several times for transporting illegal aliens in the area. After agents determined that the two passengers were illegally in the United States, the agents arrested Mr. Fierro and charged him with conspiracy to transport illegal aliens and transporting illegal aliens. Ms. Saldaña and the other passenger were taken to the Deming USBP station and questioned.

5.	On or about July 3, 2008, Ms. Saldaña left her home in Morelia, Michoacan, Mexico

---

[2] The superseding indictment and exhibits indicate the date was July 10, 2008.

[3] Deming is approximately 35 miles north of the border.

2

bound for Atlanta, Georgia. Her father-in-law accompanied her to the town of Palomas, Chihuahua, Mexico, which is located on the Mexico-United States border, just south of Columbus, New Mexico. Ms. Saldaña's father-in-law had heard from a friend that a man named "Marcelo," who frequented the plaza in Palomas, could help Ms. Saldaña cross the border.

6. Ms. Saldaña and her father-in-law checked into a hotel in Palomas, and waited in the lobby. During the evening, a man came into the lobby and met with a woman. The next day, during daylight hours, Ms. Saldaña and her father-in-law saw the same man come into the hotel and meet with the same woman in an adjoining restaurant. Ms. Saldaña was able to see the man clearly and heard him identify himself as "Marcelo."

7. Ms. Saldaña's father-in-law approached Marcelo and arranged for Marcelo to "jump" Ms. Saldaña across the border. About an hour and a half later, Marcelo and another man picked up Ms. Saldaña and drove her to a house in Palomas. The drive lasted about five minutes and occurred during daylight hours. After they reached the house, Marcelo left and Ms. Saldaña crossed the border into the United States.

8. Ms. Saldaña was apprehended by USBP and was returned to Mexico through Ciudad Juarez, Chihuahua, Mexico. From Ciudad Juarez, Ms. Saldaña took a bus back to Palomas, arrived in the afternoon, and met her father-in-law at the hotel. Marcelo helped Ms. Saldaña cross the border later that night, sometime after midnight, during the early morning hours.

9. Ms. Saldaña crossed the border by walking around the barbed wire fence west of the Columbus port of entry and proceeding on foot north to a water tower. Once at the water tower, she called a phone number for "Crespin" that Marcelo had given to her. Mr. Fierro answered. Within a couple of minutes, Mr. Fierro arrived in a vehicle and picked her up. Mr. Fierro informed Ms. Saldaña it was going to be a lot easier for them to evade USBP because it had been raining. Mr.

Fierro proceeded north on New Mexico State Road Highway 11. When they reached Deming, they were pulled over by the police for expired plates.

10. The name "Marcelo" combined with the involvement of Mr. Fierro prompted Border Patrol agents to connect Ms. Saldaña's account to Defendant, whose first name is Marcelo. USBP agents had suspected Defendant was involved in alien smuggling due to his prior arrests and his connection to Mr. Fierro. Specifically, Defendant had been arrested by USBP on two occasions for transporting illegal aliens, once near Truth or Consequences, New Mexico, in March 2008, and once near Deming between March 2008 and July 2008. Additionally, on May 21, 2008, Mr. Fierro was arrested while driving a vehicle registered to Defendant and transporting two illegal aliens. At the time, Defendant was the only person by the name of Marcelo who was the subject of a USBP investigation for transporting illegal aliens in the Deming area.

11. Agents did not ask Ms. Saldaña for a physical description of "Marcelo." Agent Garcia was aware of the physical characteristics of Defendant because USBP had arrested Defendant on two occasions and Defendant's photograph was in the USBP IDENT database. Based on Ms. Saldaña's reference to the smuggler as "Marcelo," Agent Garcia compiled a photographic lineup that included Defendant and five other Hispanic men with physical characteristics similar to Defendant. (Pl. Ex. 1.)

12. Agent Garcia obtained the photo of Defendant and four other photos from the USBP IDENT database of booking photos taken of suspects at the Deming USBP station within the prior year. The sixth photo is from the resident alien card of a suspect in a different USBP investigation. Agent Garcia used a software program to arrange the photos in a "six pack" formation, with three photos on the top numbered 1, 2, and 3, and three photos on the bottom numbered 4, 5, and 6.

13. Agent Garcia placed Defendant's photo at position number 2, which is the top center

of the lineup. Agent Garcia placed Defendant's photo at the top center position because Agent Garcia alternates the position in which he places the suspect's photo. The other four photos from the IDENT database were placed at positions 1, 3, 4, and 6. The resident alien card photo is at the bottom center, in position 5.

14.    The background of Defendant's photo appears lighter than the other because it was the most recent and it was taken in front of a white refrigerator at the USBP Deming station. The background of the photo in position 5, the resident alien card photo, appears lighter than the other four photos, although it is not as light as the background in Defendant's photo.

15.    The subjects in positions 1, 3, 4, and 6, the four other IDENT database photos, are approximately the same size. Defendant's head appears slightly larger than the subjects in 1, 3, 4, and 6. The subject in position 5, the resident alien card photo, appears larger than that of Defendant.

16.    All six subjects in the lineup appear to be Hispanic men in their thirties. All have short, dark hair and wear casual, street clothing. Four of the subjects, including Defendant, have mustaches. One wears eyeglasses. Defendant and two others sport collared shirts, one has a crew neck shirt, and two wear sleeveless shirts.

17.    Before showing the photographic lineup to Ms. Saldaña, Agent Leonard Padilla read a form entitled "Photographic Line-up Admonition" to Ms. Saldaña in Spanish. (Pl. Ex. 2.) The "Photographic Line-up Admonition" provides:

> In a moment[,] I am going to show you a group of photographs. This group of photographs may or may not contain a picture of the person who committed the crime now being investigated. Keep in mind that hair styles, beards, and moustaches may easily be changed. Also, photographs may not always depict the true complexion of a person - it may be lighter or darker than shown in the photo. When you have looked at all the photos, tell me whether or not you see the person who committed the crime. Do not tell other witnesses that you have or have not identified anyone.

(Pl. Ex. 2.)

18. When Agent Garcia showed Ms. Saldaña the six-photo lineup, Ms. Saldaña immediately pointed out the photo of Defendant and identified him as "Marcelo." Ms. Saldaña then asked if she could look at the array for a while. Ms. Saldaña then looked at the lineup for a few minutes and again identified Defendant as "Marcelo."

19. During her meetings with him in connection with the two border crossings, Ms. Saldaña observed Marcelo for a total time period of about one hour. About eighteen hours elapsed between the last time Ms. Saldaña saw Marcelo in Mexico and when she identified Defendant as "Marcelo" in the photo lineup. Ms. Saldaña also identified Defendant as "Marcelo" in court.

## CONCLUSIONS OF LAW

1. "When the constitutionality of a photo array is challenged, the due process clause requires a two-pronged inquiry: first, the court must determine whether the photo array was impermissibly suggestive, and if it is found to be so, then the court must decide whether the identifications were nevertheless reliable in view of the totality of the circumstances." *United States v. Sanchez*, 24 F.3d 1259, 1261-62 (10th Cir. 1994).

2. In determining whether a photo array was impermissibly suggestive, courts use a number of factors, including: (1) size of the array; (2) the manner of its presentation; and (3) the individual characteristics of the photographs themselves. *Sanchez*, 24 F.3d at 1262; *see also United States v. Wiseman*, 172 F.3d 1196, 1208 (10th Cir. 1999).

3. Defendant contends that the photo lineup was impermissibly suggestive in that (1) Defendant's photo had a much lighter background than the other five photos; (2) Defendant's photo appeared larger than the others due to the light background; and (3) Defendant's photo was "strategically placed at the top row center of the array causing it to stand out much like the angel on

top of a Christmas tree." (Def.'s Motion at 3.) Additionally, at the suppression hearing, Defendant argued that Agent Garcia's failure to ask Ms. Saldaña for a physical description of "Marcelo" prior to compiling the photo lineup contributed to the suggestive nature of the identification. At my request, defense counsel submitted a letter brief on this issue.

4. With respect to the first factor, the size of the array, the Tenth Circuit has held that "the number of photographs in an array is not itself a substantive factor, but instead is a factor that merely affects the weight given to other alleged problems or irregularities in an array." *Sanchez*, 24 F.3d at 1262. "The larger the number of pictures used in an array, the less likely it is that a minor difference, such as background color or texture, will have a prejudicial effect on selection." *Id.* at 1263. While there is no per se rule that a lineup with only six photos is unconstitutional, this number is "sufficiently small to weigh heavily in the balance of factors to be considered." *Sanchez*, 24 F.3d at 1263. Thus, the manner of presentation and the individual characteristics of the photographs themselves must be considered.

5. With respect to the question of whether the manner of presentation of the lineup was unduly suggestive, Defendant argues that Agent Garcia's failure to ask Ms. Saldaña for a description of "Marcelo" prior to compiling the photo lineup contributed to the suggestive nature of the identification. Defendant reasons that, by showing Ms. Saldaña the six photographs, agents "telegraphed" that they believed that Marcelo was one of the six people and invited misconduct on the part of Ms. Saldaña. In his letter brief, defense counsel cited only to *United States v. Wiseman*, 172 F.3d 1196 (10th Cir. 1999), in support of this contention.

6. In *Wiseman*, the suspect was apprehended in Arkansas after a string of robberies in New Mexico. *Wiseman*, 172 F.3d at 1202-03. After the defendant was apprehended in Arkansas, a photo of him was forwarded to a police officer in Carlsbad, New Mexico, who put together a

7

lineup. *Wiseman*, 172 F.3d at 1208. The police officer "used a system in which the suspect's photograph is classified according to several characteristics, such as shape of the face, age, height, race and hair color. This classification scheme is used . . . to select photographs of other individuals who are generally similar in appearance to the suspect." *Id*.

7. Notably, the officer in *Wiseman* used the characteristics exhibited in the photograph of the suspect in order to compile the lineup. *Wiseman*, 172 F.3d at 1208. It is significant that Agent Garcia used the same process to compile the lineup in this case albeit working from a known suspect's characteristics. For this reason, *Wiseman* does not stand for the proposition that law enforcement must use a physical description in order to compile a photographic lineup. As a consequence, *Wiseman* does not support Defendant's argument. Defendant has submitted no authority, and my research has revealed no authority, that would support the notion that law enforcement is required to obtain a physical description of the suspect before compiling a photo lineup.

8. It bears underscoring that Defendant was the only person by the name of "Marcelo" who was under investigation by the Deming USBP station in July 2008. Prior to the identification, Defendant had been arrested two times between March and July 2008. Mr. Fierro was arrested on May 21, 2008 for transporting aliens in a vehicle registered to Defendant. Based on these factors, it was reasonable for Agent Garcia to compile the photo lineup based on the physical characteristics exhibited by Defendant in his photo contained in the USBP IDENT database. The fact that the agents did not obtain a physical description of "Marcelo" before compiling the array did not render the array impermissibly suggestive.

9. In any event, the individual characteristics of the photographs are not impermissibly suggestive. While the background of Defendant's photo is lighter than the backgrounds of the other

photos, this is not the kind of "sharp contrast" in photos that might render a photo array impermissibly suggestive. *See Wiseman*, 172 F.3d at 1209 (finding significant that the photo used in the array in that case showed the defendant with very prominent dark circles under his eyes and an "extremely unnatural, chalk-white pallor," while the skin tones in the photos of the other five persons in the array looked natural and the fact that the other five persons had thin chains around their necks indicating their photos were taken under similar circumstances).

10. Here, the background of Defendant's photo does appear lighter than the other photos. However, the background of the photo in position 5 also appears lighter than the other four photos. Although Defendant's head appears slightly larger than four of the other subjects, the head of the subject in position 5 appears larger than that of Defendant. Unlike the array in *Wiseman*, these factors do not make the photo of Defendant stand out prominently from the others in the array and would not unduly draw the viewer's attention. *See Wiseman*, 172 F.3d at 1209.

11. The placement of Defendant's photo in the center of the top row is not unduly suggestive. Defendant's photo and the photos of the other five men are similar. The six subjects in the lineup are Hispanic males who appear to be in their thirties. All have short, dark hair and wear casual clothing. Four of the suspects have mustaches and one wears eyeglasses. The size of the photos is approximately the same and they were taken under similar circumstances. Consequently, the photo lineup is not impermissibly suggestive.

12. Even if the photo lineup were to be found impermissibly suggestive, Ms. Saldaña's pre-trial identification of Defendant is reliable under the totality of the circumstances. Factors relevant to this question include: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the identification, and (5)

the length of time between the crime and the identification. *Wiseman*, 172 F.3d at 1210 (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)).

13. Ms. Saldaña had several opportunities to observe "Marcelo" during the two occasions he helped her cross the border. At least three of these opportunities occurred during daylight hours in well-lit conditions in the hotel lobby, in the car, and at the house. It is material that Ms. Saldaña had reason to pay close attention to "Marcelo" as he explained to her how to cross the border and how to contact Mr. Fierro. Significantly, Ms. Saldaña demonstrated a high level of certainty at the identification. Agent Garcia testified that she identified Defendant as "Marcelo" without hesitation. The fact that only eighteen hours elapsed between the last time she saw "Marcelo" and the time she picked him out of the lineup underscores the reliability of the identification. Under these circumstances, the identification was reliable under a totality of the circumstances.

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion to Suppress Evidence [Doc. 47], filed on November 21, 2008, is **DENIED**.

_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**